UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ALEX HATTEM, solely in his capacity as
a participant in a pension plan funded by
by The Long-term Investment Trust;
J.P. MORGAN CHASE BANK, not in its
individual capacity but solely in its capacity
as trustee for The Long-term Investment Trust;
AT&T INVESTMENT MANAGEMENT
CORPORATION, not in its individual capacity
but solely in its capacity as The Long-Term
Investment Trust's "Named Fiduciary,"

                     Plaintiffs,

04 Civ. 1944 (GEL)

   -v-

**OPINION AND ORDER**

ARNOLD SCHWARZENEGGER,
in his Official Capacity as Governor of
the State of California; GERALD A.
GOLDBERG, in his Official Capacity as
Executive Officer of the California
Franchise Tax Board; DESMOND PRESS
in his Official Capacity as Program Manager
of the California Franchise Tax Board,
and DOES 1 - 10,

                     Defendants.

------------------------------------------------------------x

Kevin C. Logue, Richard C. Schoenstein,
Thomas J. Finn, Paul, Hastings, Janofsky &
Walker LLP, New York, New York, for plaintiffs.

Bill Lockyer, Attorney General of the State of
California, W. Dean Freeman, Lead Supervising Deputy
Attorney General, Steven Lew, Donald Currier,
Deputy Attorneys General, Los Angeles, CA,
for defendants.

GERARD E. LYNCH, District Judge:

Plaintiffs, respectively a participant, a trustee, and a fiduciary in a pension plan funded by The Long-Term Investment Trust, allege that California statutes that tax the unrelated business taxable income of the Trust are preempted by the federal Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and seek declaratory and injunctive relief accordingly. The parties now cross-move for summary judgment. Defendants' motion will be granted, and that of plaintiffs will be denied.

## BACKGROUND

Unless otherwise noted, the following facts are drawn from plaintiffs' Local Rule 56.1 statement of undisputed material facts, submitted in support of their own motion for summary judgment, which defendants have fully incorporated in support of their motion. In 1984, AT&T Corporation established the AT&T Master Pension Trust (amended in 1996 to change its name to The Long Term Investment Trust) ("Trust"), which has as its sole purpose the holding and managing of the assets of various ERISA-covered pension plans established and maintained by AT&T and its affiliates. At all times, the Trust has been, and continues to be, a qualified tax-exempt trust under the Internal Revenue Code ("IRC"), 26 U.S.C. §§ 401(a) and 501(a), subject to federal income taxes only to the extent that it receives unrelated business taxable income ("UBTI"), pursuant to IRC § 511. Since at least 1994, the Trust has earned income from a variety of investments, including limited partnership interests acquired with Trust assets. Since such income from the Trust's limited partnership investments may constitute UBTI as defined in IRC § 512, the Trust files federal tax returns and pays federal taxes as appropriate.

2

Plaintiffs filed the instant complaint on March 11, 2004, challenging a California tax provision that imposes a separate state tax on UBTI earned by trusts otherwise tax-exempt under IRC § 401(a). See Cal. Rev. & Tax § 17651(b) (imposing UBTI tax on trusts exempt under Cal. Rev. & Tax § 17631, which in turn, defines as tax-exempt those organizations, with certain exceptions, exempt under IRC § 401(a)). California's definition of UBTI mirrors that found in IRC § 512, see Cal. Rev. & Tax § 23732. The Trust, accordingly, is subject to California's UBTI tax, and between 1994 and 2002, defendants have collected $6,149,438.29 in taxes on the Trust's UBTI. Plaintiffs contend that any such tax is preempted under ERISA § 514(a), 19 U.S.C. § 1144(a), and that defendants' collection of these taxes is thus illegal. Plaintiffs seek declaratory relief as to the preemption of any California tax law imposing a tax on the Trust's UBTI and enjoining further collection of any such taxes. (Compl. ¶ 31.)[1] Both parties now move for summary judgment.

## DISCUSSION

I. Legal Standard on Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Here, however, there are no material disputed facts, and the case turns purely on issues of statutory interpretation, appropriately adjudicated on a motion

---

[1] Plaintiffs had additionally sought a refund of past taxes paid on the Trust's UBTI, but in otherwise denying defendants' earlier motion to dismiss, the Court struck the claim for monetary relief as barred by the Eleventh Amendment. See Hattem v. Schwarzenegger, No. 04 Civ. 1944 (GEL), 2004 WL 1192355, at *3 (S.D.N.Y. May 27, 2004).

for summary judgment.  See Metro. Life Ins. Co. v. Bigelow, 283 F.3d 436, 440 (2d Cir. 2002).

II. Tax Injunction Act

As a preliminary matter, defendants argue that plaintiffs' suit is barred in its entirety by the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, which provides that

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The Supreme Court has held that the purpose of the TIA is "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes," California v. Grace Brethren Church, 457 U.S. 393, 408 (1982), quoting Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 522 (1981), and defendants cite to Seventh and Ninth Circuit cases for the proposition that civil suits asserting ERISA preemption are not excepted from the TIA's proscription.  See Darne v. Wisconsin, 137 F.3d 484 (7th Cir. 1998); Ashton v. Cory, 780 F.2d 816 (9th Cir. 1986).  (D. Mem. 14–17.)

But defendants too lightly disregard the clear Second Circuit precedent cited by plaintiffs. (P. Reply Mem. 6–8.)  For the TIA to operate as a bar to suit, a "plain, speedy and efficient remedy" must be available in state court.  In Travelers Ins. Co. v. Cuomo, 14 F.3d 708 (2d Cir. 1993), rev'd on other grounds sub nom. New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645 (1995), New York taxpayers sued as plan fiduciaries to enjoin the enforcement of New York statutes imposing surcharges plaintiffs alleged were preempted by ERISA.  Id. at 712.  Affirming the district court's holding that such an action was not barred by the TIA, the Second Circuit held that no such "plain, speedy and efficient"

4

remedy exists where plaintiff taxpayers sue to enjoin practices violative of ERISA because "Congress has divested state courts of jurisdiction over such claims." Id. at 714, citing ERISA § 502(e), 29 U.S.C. § 1132(e)(1). Although the Supreme Court reversed the Second Circuit's decision, it did so on unrelated grounds, remarking only that "[n]either party challenges [the conclusion of the district court and court of appeals that no 'plain, speedy and efficient remedy' exists in state court because ERISA divests state courts of jurisdiction] and we have no occasion to examine it." Travelers Ins. Co., 514 U.S. at 652 n.4. Accordingly, Travelers Insurance Co. v. Cuomo remains good law in this Circuit for the proposition that no "plain, speedy and efficient" remedy exists in state court for the type of complaint brought here. Accordingly, the TIA does not bar this suit.

III. ERISA Preemption

ERISA, enacted in 1974, aims at the comprehensive and exclusive federal regulation of employee welfare and pension benefit plans, see generally Travelers Ins. Co., 514 U.S. at 650–51, and, accordingly, preempts state laws "insofar as they . . . relate to any [ERISA-covered] employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a). In determining which state laws are preempted under § 514(a), courts must apply the starting presumption that "the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Travelers Ins. Co., 514 U.S. at 655, quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947) (internal quotation marks omitted). There can be no question that taxation goes to the heart of a state's traditional regulatory power, Case of the State Freight Tax, 82 U.S. (15 Wall.) 232, 272 (1872), and, thus, that plaintiffs bear the "considerable burden of overcoming 'the starting presumption that Congress does not intend to supplant state

5

law.'" De Buono v. NYSA-ILA Medical and Clinical Services Fund, 520 U.S. 806, 814 (1997), quoting Travelers Ins. Co., 514 U.S. at 654.  On the other hand, this burden is no higher for state tax laws than for any other state law not excepted from ERISA preemption under the savings clause of § 514(b), 29 U.S.C. § 1144(b).  De Buono, 520 U.S. at 814 n.11.

Although § 514(a) provides that state law is preempted under ERISA where it "relate[s] to any [ERISA-covered] employee benefit plan," the Supreme Court long ago rejected the most literal and expansive reading of the "relate to" language: "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere." Travelers Ins. Co., 514 U.S. at 655 (internal quotation marks and citation omitted).  The Supreme Court's consideration of the "relate to" language across several cases has yielded the following two-part inquiry: "A law 'relate[s] to' a covered employee benefit plan for purposes of § 514(a) if it [1] has a connection with or [2] reference to such a plan." California Div. of Labor Standards Enforcement v. Dillingham Constr., 519 U.S. 316, 324 (1997) (internal quotation marks and citation omitted).

In turn, a state law "references" an ERISA-covered plan where "a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation." Id. at 325.  Determining whether a state law "has a connection with" an ERISA-covered plan, by contrast, requires examination of "'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as [] the nature of the effect of the state law on ERISA plans." Id., quoting Travelers Ins. Co., 514 U.S. at 656, 658–59.  Where burdens imposed by state law on ERISA plans are so great as to operate as a regulation of the plans themselves, that is, to compel plan structure or choices,

6

state law will be preempted as inconsistent with "the nationally uniform administration of employment benefit plans," Travelers Ins. Co., 514 U.S. at 659, 662, that is a goal of ERISA. State laws which only incidentally affect plan administration in a manner "no different from myriad state laws in areas traditionally subject to local regulation" are not preempted. Id. at 668; see also District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 130 n.1 (1992) ("Pre-emption does not occur . . . if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability.") (internal quotation and citations omitted).

Plaintiffs argue that California's UBTI tax both references and has an impermissible connection with ERISA-covered plans. But California's UBTI tax does not explicitly reference ERISA-covered plans. Its sole connection to ERISA-covered plans derives from the fact that the tax is levied on "every trust" and "appl[ies] in the case of any trust which is exempt" under § 17631, which incorporates IRC § 401(a) as its definition of tax-exempt organizations. See Cal. Rev. & Tax §§ 17631, 17651(a)–(b). Although this certainly makes ERISA-covered plans subject to California's UBTI tax, along with other employer "stock bonus, pension, or profit sharing plans" exempt under IRC § 401(a), it does not convert the tax into one which "acts . . . exclusively upon ERISA plans." Moreover, under a separate provision of its tax code, California imposes an identical UBTI tax on "every organization or trust exempt" under Chapter Four of the California Revenue and Taxation Code, which confers tax-exempt status to a wide-variety of nonprofit organizations. See Cal. Rev. & Tax §§ 23701 et seq. (exempting certain nonprofit organizations); 23731 (imposing UBTI tax on exempt organizations). The challenged state tax is thus not specifically aimed at ERISA trusts, but simply operates to bring them into conformity

7

with the tax laws applied to all other similar entities.

Plaintiffs concede that § 17651 does not act exclusively on ERISA-covered plans, but nonetheless argue that the tax should be preempted to the extent it reaches such plans. (P. Reply Mem. 3.) Neither case cited by plaintiffs in connection with this argument supports their position. Mackay v. Lanier Collection Agency & Service, Inc., 486 U.S. 825 (1988), would appear to hold precisely the opposite. There, a state law provision specifically exempting ERISA plans from garnishment was held to be preempted, while the general garnishment statute, in spite of its potential to interfere with participants' receipt of benefits from ERISA-covered plans, was upheld. Id. at 841. And in Greater Washington Board of Trade, although the challenged provision reached both covered and exempt plans, and is thus more analogous to § 17651, the Supreme Court held the provision preempted to the extent it reached covered plans because the provision required employers to provide benefits to disabled workers "equivalent to the existing health insurance coverage," where "existing health insurance coverage" specifically and concededly referenced ERISA-covered plans, and thus, the benefits required under DC law were set with reference to covered plans. 506 U.S. at 130–31 & n.3; see also Dillingham, 519 U.S. at 325 (describing Greater Washington Board of Trade as a case in which "the existence of ERISA plans is essential to the law's operation"). By contrast, § 17651 does not reference the plans themselves, as opposed to the trusts that administer them, and does not require the existence of ERISA-regulated plans to give content to its substantive provisions. Indeed, the California UBTI tax, modeled on that imposed by Congress in 1950 and expanded in 1969 to combat the unfair business advantage enjoyed by tax-exempt organizations as against their for-profit rivals, see 26

8

CFR § 1.513-1,[2] was first enacted in 1951, and the specific section plaintiffs protest, § 17651, in 1955, well before the advent of ERISA.

Neither does § 17651 have an impermissible connection with ERISA-covered plans. As set out above, a connection will be found where burdens imposed on ERISA-covered plans by state laws are so great as to regulate the plans themselves, potentially subjecting plans to myriad regulatory schemes inconsistent with the purpose of ERISA to provide a comprehensive scheme of plan administration. Plaintiffs argue that California's UBTI imposes a "severe administrative burden on the Trust as well as significantly impact[s] the Trust's investment decision and returns." But this "severe administrative burden" turns out to be nothing more than filing an annual state tax return, which requires it to review its investment vehicles and determine how much unrelated business income to apportion to California, given the Trust's investment activity in all fifty states. (P. Mem. 10–11.) Although plaintiffs claim that the costs of preparing a California tax return detract from the funds available for investment and payment of benefits, it provides no real information as to the costs imposed on the Trust for compliance with California's laws; it submits only an affidavit from its accountant which fails to segregate costs incurred for filing federal and California tax returns, merely putting the total cost for tax return

---

[2] As defendants point out, New York University's macaroni factory provides the locus classicus. (D. Mem. 1–2.) The C.F. Mueller Company, a maker of macaroni and affiliated products, was operated for the benefit of the university's law school, and all of its profits were donated to the university. Although the pasta manufacturer was ultimately successful in appealing the decision of the tax commissioner to collect taxes on its profits, the UBTI tax had been passed by Congress in the interim. See C.F. Mueller Co. v. Comm'r of Internal Revenue, 190 F.2d 120, 121 (3d Cir. 1951); see also United States v. Am. Bar Endowment, 477 U.S. 105, 119–120 & n.1 (1986) (Stevens, J., dissenting) (discussing history of the federal UBTI tax and the case of the Mueller Company).

preparation for the years 1997–2003 at $230,700, as compared to assets of over $18 billion.[3]
(Carroll Aff. ¶¶ 8, 11). As defendants point out, the Trust is already required to assess its unrelated business income for purposes of filing its federal tax return, as well as to identify its assets and liabilities to satisfy ERISA's mandated, annual actuarial statement, see ERISA § 103, 29 U.S.C. § 1023. Even if complying with California law requires the Trust to take the additional step of assessing and apportioning its income on a state-by-state basis as plaintiffs contend (and even if permitting UBTI taxation on a state-by-state basis might require the Trust to be familiar with as many as fifty different state tax codes) (P. Mem. 10, 12), these costs are no greater than those ordinarily associated with doing business across several jurisdictions. The claimed "severe administrative burden" is largely illusory.

Of course, payment of the UBTI tax itself constitutes a burden, reducing by the amount of the tax the funds available for investment and payment to beneficiaries. But the payment of the tax, along with the claimed additional administrative burdens, and the constraint on the Trust's investment choices that plaintiffs contend results from having to factor in the risk of incurring UBTI on particular investment vehicles (P. Mem. 11–12), are only "economic influences" on plan administration. State laws with indirect or even direct economic influences on ERISA-covered plans are not preempted where they are insufficient to "bind plan administrators to any particular choice and thus function as a regulation of an ERISA plan itself." Travelers Ins. Co., 514 U.S. at 659–60, 662 (referring to "indirect economic influences" and stating further that

---

[3] Plaintiffs also claim that the Trust spent $99,558 in connection with a dispute with the California Franchise Tax Board over the UBTI tax and $266,637 for the preparation and filing of refund claims. (Carroll Aff. ¶ 11.) These costs, however, are not cognizable as a measure of the burden of the UBTI tax on the Trust as they stem from non-compliance.

neither "a law authorizing an indirect source of administrative cost" nor "a law operating as an indirect source of merely economic influence on administrative decisions . . . suffice to trigger pre-emption"); see De Buono, 520 U.S. at 815–16 (direct/indirect distinction implied by Court of Appeals untenable; state law directly imposing tax on gross receipts for patient services at health care facilities, including those owned and operated by an ERISA-covered plan, not preempted in that it was "one of 'myriad state laws' of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not 'relate to' them within the meaning of the governing statute"); Dillingham, 519 U.S. at 334 (no preemption where the challenged provision, which permitted a lower wage to be paid to participants in apprenticeship programs, including ERISA-covered programs "alters the incentives, but does not dictate the choices, facing ERISA plans"). While "a state law might produce such acute, albeit indirect, economic effects, by intent or otherwise," as to function as a regulation of ERISA-covered plans, Travelers Ins. Co., 514 U.S. at 668, plaintiffs have not demonstrated any way in which payment of state UBTI tax, or the administrative burdens and alterations in investment strategy it occasions, dictate, rather than influence, their choices. The central evil at which ERISA preemption is addressed — "minimiz[ing] the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government," Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142 (1990) — is wholly absent here. Plaintiffs thus fail to demonstrate that § 17651 has an impermissible "connection with" ERISA-covered plans, such that it should be preempted on that or any other basis.

Finally, plaintiffs rely heavily on a decision of the New York State Tax Appeals Tribunal, in which that body, which hears appeals from the decisions of Administrative Law Judges and

11

issues decisions binding on the New York State Department of Taxation and Finance, found New York's UBTI tax preempted by ERISA. Matter of McKinsey Master Retirement Plan Trust, DTA No. 817551, 2003 WL 21133964 (N.Y. Tax. App. Div. May 8, 2003). The Tax Appeals Tribunal was persuaded that New York's UBTI tax, substantially similar to that imposed by California, referred to ERISA-covered plans because those organizations subject to the tax were defined with reference to IRC § 401(a), and had a connection with ERISA-covered plans because of the additional burdens imposed by the tax, impacting the investment strategy of plans and directly reducing funds available for plan beneficiaries. McKinsey, 2003 WL 21133964 at *11. But this Court is not bound by the decisions of the New York State Tax Appeals Division, and to the extent that tribunal was persuaded by arguments similar to those presented here, this Court respectfully disagrees for the reasons stated above. In this connection, the Court would only add that the tribunal's reliance, in part, on the reduction in monies available to beneficiaries due to the imposition of tax on a fund's income appears misplaced in light of Supreme Court precedents finding state law provisions not preempted, even where those provisions potentially increased the costs of welfare plan benefits to plan participants, De Buono, 520 U.S. 816 ("Any state tax, or other law, that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is pre-empted by the federal statute."), and interfered with the collection of plan benefits via garnishment, Mackay, 486 U.S. at 841.

Accordingly, plaintiffs have not demonstrated that § 17651 either refers to or has a connection with ERISA-covered plans such that it is preempted under the "relate[s] to" language of ERISA § 514(a).

## CONCLUSION

Defendants' motion for summary judgment is granted, and plaintiffs' corresponding motion is denied. Accordingly, the Complaint is dismissed in its entirety.

SO ORDERED.

Dated: New York, New York
      June 15, 2005

_____
GERARD E. LYNCH
United States District Judge